## 16328

LIMEHOUSE v. SOUTHERN RY. CO. *ET AL.*
(Two Cases)
(58 S. E. (2d) 685)

*Messrs. Moss & Moss,* of Orangeburg, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellants,*

*Messrs. C. Walker Limehouse* and *Hydrick & Hydrick,* all of Orangeburg, *for Respondents,*

March 14, 1950.

OXNER, Justice.

These actions were brought by two minors of tender years for the recovery of damages on account of personal injuries sustained when an automobile driven by their mother was struck by a passenger train of the Southern Railway Company at a public crossing in the City of Orangeburg. The trial resulted in a verdict in each case against the railroad company and the engineer for punitive damages in the sum of $1,500.00.

The first question to be determined is whether the Court below erred in refusing a motion of appellants for a directed verdict made at the conclusion of the testimony.

There was some evidence tending to show a failure to give the crossing signals required by Section 8355 of the Code. Such neglect, if found to exist, constituted negligence *per se* and under the construction which this Court has placed upon Section 8377, a disputable presumption arose that this omission was the proximate cause of the plaintiffs' injuries. The railway company may avoid liability under Section 8377 if "it is shown that in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or willful negligence, or was acting in violation of the law, and that such gross willful negligence or unlawful act contributed to the injury." Without undertaking to review the evidence, it clearly appears that the mother of these children, in the op-

eration of the automobile in which they were riding, was guilty of negligence which was so gross as to assume the nature of wantonness. Plaintiffs were, therefore, not entitled to have their cases submitted to the jury under the crossing statute.

Plaintiffs allege in their complaint, however, not only the failure to give the statutory signals, but several acts of common law negligence. There was abundant evidence to the effect that the train was being operated at an excessive rate of speed and at a speed in excess of the maximum prescribed by an ordinance of the City of Orangeburg. There was also some testimony tending to show that the crossing was not properly flagged on the occasion in question. The foregoing was sufficient to warrant submission of the case to the jury. As to the cause of action at common law, the contributory negligence or gross negligence of the mother would be no defense. Of course, the children, both of whom were under seven years of age, were incapable of personal negligence. It is well settled that in an action by a child for personal injuries, the contributory negligence of a parent or custodian is no defense. In discussing the question in *Watson, Administrator, v. Southern Railway,* 66 S. C. 47, 44 S. E. 375, 376, the Court said: "To impute contributory negligence to such a child would be to make him a tort feasor by imputation, when he could not be such in fact. It would be visiting the innocent with the faults of the guilty. It would permit the child's protector to be authorized to destroy it. It would place the personal rights of the child at the mercy of any one by whose fault it is injured, provided the guilty one happens to have the co-operation of the child's custodian in the work of injury. Such a doctrine is an anomaly in the law."

The next question relates to the form of the verdict. The jury awarded only punitive damages. It is undisputed that these children sustained personal injuries as a result of the collision, although not of a serious or permanent nature. The attending physician testified that the little boy had a

laceration on his forehead about an inch and a half long which required several stitches and left a small scar, and that there was "considerable swelling of his forehead and eyes." He remained in the hospital several days. The little girl sustained a bruise on the top of her head.

Implicit in the verdict of the jury is a finding that appellants were guilty of willfullness or wantonness which was a proximate cause of the collision. It being undisputed that the minors sustained some injuries, they must be held to have established their right to compensatory damages. A verdict for punitive damages alone under these circumstances is inconsistent and illogical.

"According to the weight of authority, exemplary damages or punitive damages are not recoverable in the absence of proof of actual damages." 15 Am. Jur., Damages, Section 270. In those jurisdictions adopting this view, there is considerable difference of opinion as to whether after actual damages are shown, it is essential that the money extent thereof be found in order to sustain a finding of punitive damages.

The cases in this State were reviewed in *Cook v. A. C. L. Railway Co.*, 183 S. C. 279, 190 S. E. 923, 924. After observing that there was much confusion in our decisions, the Court held that "where the actual damages sought are for traumatic injury, or injury to property, then in order to sustain a verdict for punitive damages, there must be actual damages capable of being measured in terms of dollars and cents—actual damages in some amount must be found independent of punitive damages." The Court said: "If the injured party has no cause of action independent of a supposed right to recover exemplary damages, then he has no cause of action at all; consequently, there must be allegations of actual or nominal damages in the pleadings and a proof thereof in a trial of the cause in order to support a verdict for punitive damages alone." That case involved an action against a railroad for the recovery of actual and puni-

tive damages for alleged personal injuries received when plaintiff leaped from an automobile in order to avoid being killed or seriously injured at a railroad crossing. The jury returned a verdict in favor of the plaintiff for $200.00 punitive damages. The Court concluded that the verdict absolved the railroad company of haing inflicted actual damages and under these circumstances there was no legal liability upon which to predicate a verdict for punitive damages. The verdict of the jury was set aside and the case remanded for entry of judgment in favor of the railroad.

When the *Cook case* is considered in the light of the facts before the Court, we do not think it is decisive of the question before us for two reasons:

(1) There was an issue in the *Cook case* as to whether the plaintiff sustained any injury. It appears from the transcript of record in that case that when the verdict was returned, plaintiff's counsel, in seeking to explain the verdict, said the jury probably concluded that plaintiff "was not injured, and they didn't give him anything for actual damages." In the instant case, the undisputed evidence showed some injury and there is no reasonable explanation for the verdict of the jury.

(2) The agreed statement in the transcript of record in the *Cook case* discloses the following: "Before the jury was discharged appellant's counsel called to the attention of the Court and of respondent's counsel the form of the verdict in the *Cook case*. Respondent's counsel announced that they were satisfied, whereupon counsel for the appellant made further motion for direction of verdict. This was overruled, the jury dismissed, and in the proper time notice of intention to appeal was served upon the respondent." In the instant case appellants' counsel did not expressly complain of the form of the verdict before the jury was discharged. The only action taken by them was to note a motion for judgment *non obstante veredicto*. The motion was marked "heard" and the grounds were not stated until some time

later. Respondents' counsel might have reasonably concluded that this motion was directed to the grounds upon which appellants moved for a directed verdict at the close of the testimony.

It is well established that where a verdict is objectionable as to form, the party who desires to complain should call that fact to the Court's attention when the verdict is published. Otherwise, the right to do so is waived. *Rhame v. City of Sumter,* 113 S. C. 151, 101 S. E. 832; *McAlister v. Thomas & Howard Co.,* 116 S. C. 319, 108 S. E. 94; *Hussman Refrigerator & Supply Co. v. Cash & Carry Grocer, Inc.,* 134 S. C. 191, 132 S. E. 173. In *McAlister v. Thomas & Howard Company, supra,* the jury, in disregard of the Court's instructions, found a general verdict for $2,500.00, without specifying whether this finding represented actual or punitive damages, or if both, the amount awarded for each. Defendant made a motion for a new trial on the ground that the verdict was not responsive to the Court's instructions. The motion was refused. In disposing of that feature of the appeal, this Court said: "It was the duty of defendant's attorney to call attention to the form of the verdict, when it was published. By failing to do so, he waived the right to raise the question presented by this exception." [116 S. C. 319, 108 S. E. 95.]

In *Bethea v. Western Union Telegraph Co.,* 97 S. C. 385, 81 S. E. 675, 676, which was an action to recover actual and punitive damages for delay in the delivery of a telegram informing plaintiff of the serious illness of his brother, the jury returned a verdict for punitive damages only in the sum of $250.00. Defendant made a motion for a new trial on the ground that the verdict showed that no actual damages had been sustained. The motion was overruled by the trial Judge. On appeal to this Court, the judgment was sustained upon two grounds: (1) That the verdict contained an implied finding of actual damages nominal in amount and not so substantial as to require expression in the verdict. It was stated, however, that if there had been no testimony

tending to prove some actual damages, even though nominal, the verdict for punitive damages alone would not have been proper. (2) That the matter complained of was a mere irregularity which should have been called to the attention of the trial Judge. In reaching this last conclusion, the Court said: "There is another reason why the appeal should be dismissed. The alleged irregularity did not involve the merits, but merely pertained to the rules of procedure. In such cases the irregularity must be called to the attention of the court at the earliest opportunity; otherwise it will be deemed to have been waived. *State v. Norton,* 69 S. C. 454, 48 S. E. 464; *City of Sumter v. Hogan,* 96 S. C. 302, 80 S. E. 497. That was not done in this case. The appellant, instead of making its objection to the form of the verdict as soon as it was read, waited until the jury separated and then urged the alleged irregularity as a ground for a new trial. This was too late."

The foregoing language was quoted with approval by Mr. Justice Cothran in *Hussman Refrigerator & Supply Co. v. Cash & Carry Grocer, Inc., supra,* 134 S. C. 191, 132. S. E. 173.

In *Lindstrom v. Kansas City Southern Railway Co.,* 202 Mo. App. 399, 218 S. W. 936, which was an action for assault committed upon the person of plaintiff by an agent and servant of the railroad, the jury found no actual damages and $500.00 punitive damages. Defendant filed a motion for judgment, contending that since the jury found that plaintiff sustained no actual damages, the verdict was in effect one for the defendant. In holding that the trial Judge erred in granting this motion, the Court said that the verdict was contradictory and the trial Judge should have sent the jury back with instructions to return a proper verdict, but as he did not do this, a new trial should be ordered. In the recent case of *Toler v. Cassinelli,* 129 W. Va. 591, 41 S. E. (2d) 672, which involved an action for damages from being locked out of an apartment by a landlord, the jury found

only punitive damages. The Court held that the proper procedure was to order a new trial.

We need not determine on this appeal whether upon publication of the verdict, the Court was empowered to require the jury to reconsider the case so as to bring in a proper verdict. Of interest in this connection are: *Lorick & Lowrance, Inc., v. Walker,* 153 S. C. 309, 150 S. E. 789; *Joiner v. BeVier,* 155 S. C. 340, 152 S. E. 652.

Our conclusion is that under the facts of this case the verdict was illogical and that it was incumbent upon appellants' counsel to have specifically complained of the irregularity immediately after the verdict was published. Having failed to do so, it might well be held that appellants have waived the question. We also think that if appellants desired to attack this verdict, the proper remedy was a motion for a new trial rather than for entry of judgment in favor of the defendants. However, this Court is vested with some degree of discretion in a matter of this kind which, under all the circumstances presented, should be exercised by granting a new trial.

The conclusion reached in the minority opinion that judgment should now be entered in favor of appellants seems to us a harsh result which is not in accord with justice and is not required by the authorities. It would be a very heavy penalty to visit upon respondents for the inadvertence or mistake made by this jury.

It would serve no useful purpose to discuss the other questions raised by the exceptions.

Judgment reversed and new trial granted.

FISHBURNE and STUKES, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice (dissenting).

These two actions, brought to recover actual and punitive damages for injuries sustained by two minors as the result

of collision between an automobile in which they were riding, driven by their mother, and a train of appellant, Southern Railway Company, operated by appellant, B. L. Wells, engineer, were tried together, and resulted in a verdict for each of the minors in the amount of $1,500.00 punitive damages, but no actual damages. Immediately after the rendition of the verdict, and before the jury was dismissed, the appellants noted a motion in each case for judgment *non obstante veredicto,* which motions were marked heard and at a later date orally argued. The grounds for the motions were those upon which appellants had previously moved for directed verdict, and the additional ground that a verdict for punitive damages only will not be permitted to stand in an action brought for traumatic injuries.

The exceptions raise seeral issues, but it seems necessary to consider only the first which is set forth in appellants' brief as follows: "Did the lower Court err in refusing the defendants' motions for judgments *non obstante veredicto* made upon the ground that a verdict for punitive damages only will not be permitted to stand in an action brought for personal injury?"

There was testimony to the effect that both of the minors, respondents herein, received injuries of a nature such as would have supported verdicts for actual damages in their behalf if the jury had concluded that their injuries resulted from the negligence of the appellants and as the proximate cause thereof. There was also testimony which the trial Judge deemed sufficient to require the submission to the jury of the issue of punitive damages. The law on both subjects was fully charged by the trial Judge.

The question involved herein has been definitely settled in this State. It was held in *Cook v. Atlantic Coast Line R. R. Co.,* 183 S. C. 279, 190 S. E. 923, 924, that where actual damages are sought for traumatic injuries, or injuries to property, and in addition punitive damages are sought upon the ground that the act causing such injuries was willful, in

order to sustain a verdict for punitive damages, actual damages in some amount must be found. It was further held in that case that the jury, having absolved the appellant from inflicting actual damages on respondent by failing to bring in a verdict for such damages, there was no legal liability upon which to predicate a verdict for punitive damages, and the trial Judge should have set aside the verdict for punitive damages only and entered judgment for the appellant. We quote from *Cook v. A. C. L. R. R. Co., supra*:

"The rule is this state appears to be: Where the pleadings allege and the evidence shows a conscious and willful violation, invasion, or infringement of a legal right, the law will presume damages sufficient to sustain an action, even though such damages may be only nominal and not capable of exact measurement; and in such case a verdict for punitive damages without the finding of actual damages will be sustained, since it will be presumed that such nominal damages incapable of admeasurement have been merged in the punitive damages. But where the actual damages sought are for traumatic injury, or injury to property, then in order to sustain a verdict for punitive damages, there must be actual damages capable of being measured in terms of dollars and cents—actual damages in some amount must be found independent of punitive damages.

"*This in nowise conflicts with suits against telegraph companies under what is ordinarily known as the 'Mental Anguish Statute,' although it is through quoting and citing from some of the cases where the mental anguish statute aided plaintiff that some of the confusion has arisen.*" (Emphasis added.)

There is no distinction between the cases now being decided and the *Cook case,* in so far as concerns applicable legal principles, and it is decisive of the issue above set forth.

It is contended by respondents that a duty rested upon the appellants to object to the form of the verdicts before the jury was discharged, and that the matter could have been

easily settled one way or another under proper instructions of the Court. The trial Judge could not have instructed the jury to again consider the case and bring in verdicts in some amount as actual damages, because such action on his part would have been tantamount to directing verdicts for actual damages in favor of the respective respondents against the appellants; and appellants are not complaining of the form of the verdicts, but are alleging that the verdicts in this form absolve them, *as a matter of law,* from all liability to pay any amount as damages. However, it is unnecessary to decide if it was within the power of the trial Judge to have corrected, or permitted the jury in any manner to reconsider, the verdicts that were rendered. We cannot see wherein any duty rested upon appellants to have verdicts corrected, the result of which entitled them to verdicts in their favor notwithstanding, as is above seen.

It seems to us that the respondents were the ones to be concerned about the form of the verdicts in the light of the principles laid down in the *Cook case.* It is stated in the argument of the respondents that the appellants did not raise the objection to the form of the verdicts until long after the jury was dismissed. The agreed "Statement" in the transcript of record is that "Immediately after the rendition of the verdicts and before the jury was dismissed the defendants (appellants) noted a motion in each case for judgment *non obstante veredicto.*" This was the only motion which it appears the interests of the appellants suggested should be made. The issue here is very different from that in *Burns v. Babb,* 190 S. C. 508, 3 S. E. (2d) 247, cited by respondent. This procedure finds a corollary in cases where the jury finds against the master and not against a co-defendant servant where the sole delicts alleged in the complaint are those of this particular servant, and the liability of the master rests solely upon the doctrine of *respondeat superior.* See *Sparks v. A. C. L. R. R. Co.,* 104 S. C. 266, 88 S. E. 739.

It is contended that Rule 79 of the Circuit Court does not authorize the trial Judge to entertain a motion for judgment

in favor of the defendant notwithstanding because of the form of the verdict. This position is wholly untenable. If the necessary result of the verdict is that the defendant is not liable to the plaintiff at all, the appropriate relief of the defendant is to have the verdict set aside and a verdict directed in favor of the defendant notwithstanding the jury's verdict in favor of the plaintiff.

There is nothing in the cases of *Glover v. Charleston & S. Ry. Co.,* 57 S. C. 228, 35 S. E. 510; *Steedman v. S. C. & G. E. Ry. Co.,* 66 S. C. 542, 45 S. E. 84; *Jones v. A. C. L. R. R. Co.,* 108 S. C. 217, 94 S. E. 490; *Fields v. Lancaster Mills,* 77 S. C. 546, 58 S. E. 609, 11 L. R. A., N. S., 822, 122 Am. St. Rep. 593, and *Doster v. Telegraph Co.,* 77 S. C. 56, 57 S. E. 671, which would authorize this Court to sustain the verdicts in these cases. Most of the above cases are referred to and distinguished in the opinion in the *Cook case,* and the inapplicability to these cases of the principles laid down in those cases will be seen by a reading of the Cook decision. The language of that case which controls and renders it necessary for these verdicts to be set aside is as follows: "In this case, involving bodily injuries, all issues were submitted to the jury. We know of no case or authority in this jurisdiction where the general rule has been departed from, where the damages sought were for traumatic injuries or for property damage. The findings of the jury for punitive damages alone expressly refutes a finding of the jury as in actual damages." In connection with this principle, see the recent case of *Allen v. A. & C. Air Line Ry. Co.,* S. C. 57 S. E. (2d) 249.

Aside from the foregoing, the record discloses that the only reasonable inference which can be drawn from the testimony is that the injuries suffered by the plaintiffs-respondents resulted from the negligence of their mother, which negligence was so gross as to amount in law to willfulness, and that her negligence was the proximate cause.

The judgments should be reversed and the cases remanded for entry of judgments in favor of appellants.

TAYLOR, J., concurs.